991 So.2d 1102 (2008)
CENTRAL COMMUNITY SCHOOL BOARD
v.
EAST BATON ROUGE PARISH SCHOOL BOARD & East Baton Rouge Parish Facilities Improvement District.
No. 2008 CA 0036.
Court of Appeal of Louisiana, First Circuit.
June 6, 2008.
*1104 Sheri M. Morris, Baton Rouge, LA, for Plaintiff/Appellant, Central Community School Board.
James P. Dore, Christopher Dicharry, Jennifer Jones Thomas, Baton Rouge, LA, for Defendants/Appellees, East Baton Rouge Parish School Board & East Baton Rouge Parish Facilities Improvement District.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
WHIPPLE, J.
This matter is before us on appeal by the Central Community School Board ("Central Board"), from a judgment of the trial court denying Central's request for mandamus relief in disputes arising from *1105 the separation of the public schools in Central, Louisiana from the East Baton Rouge Parish Public School System ("EBRP"). For the following reasons, we affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY
In an effort for Central to create its own public school system, Act 861 of the 2006 Regular Session was proposed to allow the electorate to amend Article VIII, § 13 of the Louisiana Constitution to provide that for certain effects and purposes, the Central Community School System in EBRP be regarded and treated as a parish and have the authority granted parishes, including the purposes of certain funding and the raising of certain local revenues and annual ad valorem taxes for the support of elementary and secondary schools; for submission of the proposed amendment to the electors; and for related matters. By the terms of the act, the proposed amendment was to be submitted to the electorate for approval or rejection at the statewide election to be held November 7, 2006.
In addition, Act 202 of the 2006 Regular Session was proposed to enact LSA-R.S. 17:66 and 17:66.1,[1] to provide for the Central Community School System, including its establishment and boundaries; for the school board and an interim board of control; for board membership, apportionment, qualifications, method of selection, terms of office, filling of vacancies, compensation, expenses, powers, duties, and responsibilities; relative to facilities and property; for the reapportionment of EBRP, for effectiveness and for implementation; and for related matters. The act further specified that Central would begin the actual operation of providing for the education of students within its jurisdiction on July 1, 2007, and that beginning on that date, "all lands, buildings, and improvements, facilities, and other property having title vested in the public and subject to management, administration, and control by [EBRP] for public education purposes but located within the geographic boundaries of [Central] or used to provide student transportation services to such facilities, or both, shall be managed, administered, and controlled by [Central]." LSA-R.S. 17:66(F)(1).[2]
On November 7, 2006, a majority of Louisiana voters approved the amendment of LSA-Const. art. VIII, § 13 of the Louisiana Constitution permitting the separation of Central from EBRP. Upon passage of the constitutional amendment, Acts 861 and 202 became effective on December 11, 2006.[3]
At the time of the separation, EBRP was collecting a 1% sales and use tax throughout its geographic boundaries, including the area that encompassed Central, which was levied by the EBRP Educational Facilities Improvement District ("EFID").[4] In May of 2003, the EFID *1106 had received voter approval to renew the five-year dedicated sales and use tax, which consisted of three stated Propositions. The tax was to be levied from 2004 through 2009. Proposition No. 1 consisted of a .51% sales and use tax for the purpose of funding repairs and renovations, enhancing technology, and construction of new classrooms and new schools in the public school system in EBRP. Proposition No. 2 consisted of a .08% sales and use tax for discipline; and Proposition No. 3 consisted of a .41% sales and use tax for the purpose of increasing compensation of teachers and other school system employees. The stated use and purpose of the three propositions were set forth in "A Plan to Improve Facilities/Technology, Discipline and Compensation in the East Baton Rouge Parish School System" ("the Tax Plan"), which was approved and adopted by the EBRP School Board on August 13, 1998. The Tax Plan provided for the new construction of seven schools, including Central Middle School.
After the separation from EBRP on July 1, 2007, the Central Board filed a "Petition for Writs of Mandamus" against the EBRP School Board and the EFID on July 20, 2007, requesting that the trial court order: (1) that the EBRP School Board and the EFID transfer $18,398,333.00 of the proceeds of Proposition No. 1 to Central; (2) that the EBRP School Board deliver any and all movable property, which was used for public education purposes during the 2006-2007 school year within the geographic boundaries of Central that has not already been transferred; (3) that the EBRP School Board transfer thirty-one additional buses of similar quality and condition to those used to transport students to facilities located within the geographic boundaries of Central during the 2006-2007 school year; (4) that the EBRP School Board transfer all sales and use tax proceeds received by the EBRP School Board from the City/Parish and Office of Motor Vehicles after July 1, 2007, to Central and directing the EBRP School Board to authorize the City/Parish and the Office of Motor Vehicles to forward any and all additional proceeds of sales and use taxes received on behalf of the EBRP School Board and EFID within the geographic boundaries of Central after July 1, 2007 to Central; (5) that the EBRP School Board transfer a portion of the fund balance existing as of June 30, 2007 in an amount equal to the percentage of the total number of students who attended schools within the former EBRP school system during the 2006-2007 school year who resided within the boundaries of the Central school district; (6) that Central be awarded all costs of these proceedings; and (7) that Central be granted any and all equitable relief "as may be awarded in these premises."
In response, EBRP filed Exceptions of No Cause of Action, Unauthorized Use of a Summary Proceeding, Improper Cumulation *1107 of Actions, and Vagueness and Ambiguity.
The matters were heard by the trial court on October 22 and October 23, 2007, after which the trial court rendered oral reasons for judgment denying both EBRP's exceptions and the Central Board's petition for mandamus relief. A written judgment was signed in conformity with the trial court's oral reasons on November 7, 2007.
The Central Board appeals, assigning the following as error:
1. The trial court erred in determining that La. R.S. 39:704 does not mandate [that] the special tax approved by the voters for construction of Central Middle School ... be used for the specific purpose approved by the voters.
2. The trial court erred in concluding that La. R.S. 17:66 does not mandate the transfer of all movable "property ... for public education purposes but located within the geographic boundaries of the Central Community School System" during the 2006-2007 school year to the Central School Board on July 1, 2007.
3. The trial court erred in concluding that La. R.S. 17:66 does not mandate [the EBRP] Board to transfer all buses used to provide student transportation to facilities in Central School System during the 2006-2007 school year.
4. The trial court erred in determining that La. R.S. 17:66 does not mandate [the EBRP] Board the transfer of sales and use taxes collected in Central School System received after July 1, 2007 to the Central School Board.
5. The trial court erred in determining that funds accumulated by the [EBRP] Board for public education purposes prior to July 1, 2007 are not public property required to [be] equitably divided among the two school boards providing public education in the jurisdiction from which the funds were collected.
EBRP answered the appeal, contending that the trial court erred in denying their Exceptions of No Cause of Action, Unauthorized Use of a Summary Proceeding, Improper Cumulation of Actions, and Vagueness and Ambiguity.

DISCUSSION
A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. LSA-C.C.P. art. 3863. Mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. LSA-C.C.P. art. 3862.
In reviewing the Central Board's claims, we start with the premise that mandamus is an extraordinary remedy, which must be used by courts sparingly only to compel action that is clearly provided by law, but only where it is the only available remedy or where delay occasioned by the use of any other remedy would cause injustice. Allen v. St. Tammany Parish Police Jury, 96-0938 (La. App. 1st Cir.2/14/97), 690 So.2d 150, 153, writ denied, 97-0599 (La.4/18/97), 692 So.2d 455. Moreover, mandamus will not lie in matters in which discretion and evaluation of evidence must be exercised. The remedy of mandamus is not available to command performance of an act that contains any element of discretion, however slight. Sund v. St. Helena Parish School Board, 2005-2473 (La.App. 1st Cir.5/5/06), 935 So.2d 219, 221, writ denied, XXXX-XXXX *1108 (La.9/22/06), 937 So.2d 392. Further, mandamus is to be used only when there is a clear and specific legal right to be enforced or a duty which ought to be performed. It never issues in doubtful cases. City of Hammond v. Parish of Tangipahoa, XXXX-XXXX (La.App. 1st Cir.3/26/08), 985 So.2d 171, 181.

Assignment of Error Number One
In its petition for writ of mandamus, the Central Board sought to have the EBRP School Board and the EFID transfer to the Central Board $18,398,333.00 in proceeds from the Proposition No. 1 Tax Plan that the EFID began collection of on April 1, 2004, in the geographic area that now comprises the Central school system, as proposed in the 2005-2006 budget of the EFID, for the construction of a new Central Middle School. In this assignment, the Central Board contends that the trial court's finding, i.e., that LSA-R.S. 39:704 does not mandate that the special tax approved by the voters for construction of Central Middle School be used for the specific purpose approved by the voters, is error.
Louisiana Revised Statute 39:704 provides as follows:
The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied. The records of the taxing authority shall clearly reflect the objects and purposes for which the proceeds of the tax are used.
A review of the EFID Proposition No. 1 reveals that, in sum, the purpose of the.51% sales and use tax is for "funding repairs and renovations, enhancing technology, construction of new classrooms and construction of new schools in the public school system in East Baton Rouge Parish." In rejecting the Central Board's request for mandamus relief ordering the transfer of the tax monies, the trial court ruled as follows:
The Central Community School System is asking for the monies to be transferred to build the Central Middle School. Also in Proposition One, there was a plan or a schedule, if you will, in terms of when that particular school was suppose[d] to be built and how much money was suppose[d] to be allocated per year. However, the Central Community School System on July 1, 2007 prior to the completion of this tax plan separated from the East Baton Rouge Parish School System. So the question becomes whether or not that money should be transferred to them to build that school. And in looking at the proposition, what the voters passed in that proposition as it explains, it says a plan to improve facilities/technology, discipline, and compensation in the East Baton Rouge School System. The Central Middle School is no longer in the East Baton Rouge Parish School System as of July 1, 2007. So it is this court's ruling that the $18,398,333.00 that the Central Community School System is asking for is not money to be transferred to the Central Community School System due to the fact that they were no longer a part of East Baton Rouge Parish School System. And in keeping with Proposition One, the argument was made that those monies were dedicated. But the monies were dedicated for a plan to improve facilities and technology, discipline and compensation in East Baton Rouge Parish....
The Central Board contends that it is undisputed that the electorate within the EFID approved the construction projects listed in the Tax Plan and that construction of a new Central Middle School and renovations at Bellingrath Hills and Tanglewood Elementary Schools were provided *1109 for in the Tax Plan. Further, the Central Board argues that because Acts 861 and 202 did not change the boundaries of the EFID, the taxes levied by the EFID "constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied." See LSA-R.S. 39:704. Thus, the Central Board contends, the EFID is obligated to use the proceeds of the tax for the benefit of the entire EFID in accordance with the budgets adopted prior to the enactment of Acts 861 and 202.
Citing the testimony of Robert Cooper, the EBRP Director of Facilities, that a contract for the construction of a new Central Middle School would have been awarded for the encumbered amount of $18,398,333.00 in September of 2006 had the EBRP School Board not halted the project in July of 2006, the Central Board concludes that it is entitled to a writ of mandamus directing EBRP and/or EFID to transfer to the Central Board the funds that would have been encumbered for the construction of Central Middle School prior to July 1, 2007, plus interest.
Citing the stated purpose identified in Proposition No. 1, which is "assisting the East Baton Rouge Parish School Board... in funding repairs and renovations ... and construction of new schools in the public school system in East Baton Rouge Parish ..." EBRP counters that Proposition No. 1 does not reflect that Central would establish a separate school system prior to the completion of the five-year tax, and that the citizens of EBRP did not vote to give Central $18,000,000.00 to build a school, nor did they authorize the EBRP School Board to build a school for Central. Further, EBRP notes that the East Baton Rouge Parish EFID is comprised, in part, of all of the members of the EBRP School Board and is represented by the EBRP School Board. In support, EBRP relies on LSA-R.S. 33:2740.37(B)(2), which provides that an EFID is "created for the purposes of assisting the school boards of the respective school districts" and LSA-R.S. 33:2740.37(B)(1)(a), which provides that an EFID's boundaries are "coterminous with the respective school district." EBRP also contends that the EFID authorizes the EBRP School Board to make decisions regarding the Tax Plan projects and budgets. Thus, EBRP contends, it has the discretion to modify any provisions of the Tax Plan "to accommodate unforeseen events, emergencies, and variations in estimates."
However, according to the Tax Plan, "Any such modification must be minor in relation to the intent of the Plan." While EBRP argues that the separation of Central was an "unforeseen event" that allowed for modification of the Plan, the Central Board contends that the total elimination of construction of a school is not a "minor" modification of the Plan.[5] In response, EBRP contends that it has discretion to "put the project on hold" or "cancel the project." As such, EBRP argues its decisions to reduce the budget for Central Middle School and ultimately discontinue the project, which were both reviewed by the Oversight Committee with no objection, were within EBRP's rightful authority.
As noted above, the spending of the proceeds of a special tax is governed by LSA-R.S. 39:704. Tax revenues obtained from a special tax must be used for no *1110 other purpose than that stated in the proposition submitted to and approved by the electorate. Baker v. Morehouse Parish School Board, 41,874, 41,875 (La.App. 2nd Cir.4/25/07), 956 So.2d 121, 127. Moreover, the Louisiana Supreme Court has consistently interpreted the constitution to prohibit the use of dedicated and special taxes for purposes other than those for which they were levied. City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund, 2005-2548 (La.10/1/07), 986 So.2d 1, 13-14.[6]
In the instant matter, we are faced with a unique situation in which, near the midpoint of collection of a five-year tax, by virtue of Central's July 1, 2007 separation from EBRP, the stated purpose of the proposition previously submitted to and approved by the electorate (to assist the EBRP School Board with the renovation and repair of schools in the EBRP EFID) now conflicts with the use of some of the funds as dedicated and provided for in the Tax Plan (the construction of a new Central Middle School). Mindful of the precept that tax revenues obtained from a special tax must be used for no other purpose than that stated in the proposition, see Baker v. Morehouse Parish School Board, 956 So.2d at 127, we recognize that determination of this now seemingly internally inconsistent proposition and accompanying plan requires discretion and evaluation of evidence, which clearly are not appropriate in mandamus proceedings. See Sund v. St. Helena Parish School Board, 935 So.2d at 221.
Mandamus may only issue to compel performance of a ministerial duty that is clearly provided by law in cases where the law provides no relief by ordinary means and where the legal right sought to be enforced is clear and specific. LSA-C.C.P. art. 3862; Allen v. St. Tammany Parish Police Jury, 690 So.2d at 153. Given the circumstances herein, we find the legal right sought to be enforced herein by the Central Board via mandamus is not "clear and specific." Instead, the Central Board's entitlement to mandamus under LSA-R.S. 39:704 could not be determined without analysis and reconciliation (judicial or otherwise) of the now seemingly internally inconsistent purpose of Proposition No. 1 and the dedicated funds within its incorporated Tax Plan. See Moyse v. The City of Baton Rouge, XXXX-XXXX (La.App. 1st Cir.6/9/06), 938 So.2d 1013, 1016. Moreover, it appears that the Tax Plan provides for some modification at the discretion of the EBRP School Board. Because modification of the Plan involves discretion on the part of the EBRP School Board, there is no simple ministerial duty at issue that we may compel the performance of herein. See LSA-C.C.P. art. 3863. Thus, on review, we find determination of the issue of the Central Board's rights, if any, to these tax funds is not appropriate in a mandamus proceeding. Moreover, because relief is available through ordinary proceedings, we affirm the trail court's denial of mandamus relief, although on *1111 other grounds.[7]
Thus, this assignment of error lacks merit.

Assignments of Error Numbers Two, Three, and Four
In these assignments of error, the Central Board contends that the trial court erred in concluding that LSA-R.S. 17:66(F)(1) does not mandate the transfer to the Central Board of (1) all movable property for education purposes located within the geographic boundaries of the Central school system during the 2006-2007 school year; (2) all buses used to provide student transportation to the Central school system during the 2006-2007 school year; and (3) sales and use taxes collected in Central before July 1, 2007, but received by EBRP after July 1, 2007. Accordingly, we review Central's request for relief under LSA-R.S. 17:66, applying precepts that govern mandamus proceedings.
Louisiana Revised Statute 17:66 was enacted to provide for the creation of the Central Community School Board and school system. In particular, LSA-R.S. 17:66(F)(1) was enacted to provide for the transfer of property from the EBRP school system to the Central school system, in pertinent part, as follows:
The Central Community School Board shall begin actual operation of providing for the education of students within its jurisdiction on July 1, 2007. Beginning on the date the school board begins actual operation of providing for the education of students and thereafter,... all lands, buildings, and improvements, facilities, and other property having title vested in the public and subject to management, administration, and control by the East Baton Rouge Parish School Board for public education purposes but located within the geographic boundaries of the Central community school system or used to provide student transportation services to such facilities, or both, shall be managed, administered, and controlled by the Central Community School Board.
(Emphasis added.)
With regard to the transfer of movable property to Central from EBRP, the trial court considered LSA-R.S. 17:66(F)(1), and further denied mandamus relief, as follows:
The trigger date that this court believes applies is July 1, 2007. Plaintiff states for the public education purposes during the 2006-2007 school year. But it was clear in this court's mind the legislature meant July 1, 2007 when the board was created, when the school district was created. There was no testimony that any property, movable property, was taken from the district from July 1, 2007 on. Therefore, any movable property that was taken prior to that was still in the control, custody, of the East Baton Rouge Parish School System to do as they choose fit for the different programs and schools throughout East Baton Rouge Parish School System.
The Central Board contends that the equipment and material removed by EBRP from schools in Central days after the election on the constitutional amendment and throughout the 2006-2007 school *1112 year, was clearly recognized by the Legislature as public property used to educate students in Central schools, which was contemplated in LSA-R.S. 17:66(F)(1) as property the EBRP School Board had to transfer to Central. The Central Board contends that pursuant to LSA-R.S. 17:66(F)(1), EBRP has a ministerial duty and is required by law to transfer all property located within the geographic boundaries of the Central Community school system and all property formerly located at the Central schools, or the estimated value thereof, by July 1, 2007. The Central Board further contends that EBRP has no discretion to determine which property to transfer to Central, and that EBRP's attempt to transfer only the property that it did not remove prior to July 1, 2007, "Violates not only the letter of the law[,] but also the spirit and intent of [LSA-R.S. 17:66]."
Contrariwise, EBRP interprets LSA-R.S. 17:66(F)(1) as only requiring the transfer of property located in the geographic boundaries of Central on the date the Central School Board began actual operations, i.e., July 1, 2007. EBRP further contends that prior to July 1, 2007, all schools were in the jurisdiction of the EBRP School Board, and, as such, the EBRP School Board had the discretion to decide where equipment should be located.
As to the merits of the parties' dispute over various items of movable property and funds under LSA-R.S. 17:66(F)(1), we again note that in mandamus proceedings, courts may only compel action that is clearly provided for by law and mandamus will not lie in matters where discretion and evaluation of evidence must be exercised. The applicable law clearly provides that "[beginning on the date the school board begins actual operation [July 1, 2007] ... all lands, buildings, and improvements, facilities, and other property ... located within the geographic boundaries of [Central] ... shall be managed, administered, and controlled by the Central Community School Board." See LSA-R.S. 17:66(F)(1). The Central Board argues that the trial court erred, given the intent and spirit of the statute, which equities, the Central Board argues, should weigh in its favor. However, we again note that we are prohibited from doing so in a mandamus proceeding. Thus, for these reasons, to the extent that the judgment of the trial court denied the Central Board mandamus relief under LSA-R.S. 17:66, the ruling must be affirmed. However, in doing so, we note that Central may seek relief by ordinary process or other means including a petition for declaratory judgment as to the parties' competing rights and claims to property.
Moreover, with reference to the Central Board's argument that the sales and use taxes collected in Central after July 1, 2007, should be transferred to Central from EBRP, as LSA-R.S. 17:66(F)(1) "mandates" that all property, including funds, be transferred, for the reasons stated above, even given the language of LSA-R.S. 17:66(F)(1), we find that this is not relief that can be granted or the claim determined in a mandamus proceeding. Although the Central Board points out that some of these funds were within the geographic boundaries of Central on July 1, 2007, a determination of whether Central is entitled to such funds as "property" contemplated by the statute requires more than the mere compelling of a ministerial duty to act on the enforcement of a clear and specific legal right or duty. As such, resolution of this issue is also not appropriate in mandamus proceedings.
Thus, we also find no merit to these two assignments of error.
*1113 With regard to the issue of transfer of school buses from EBRP to Central, the trial court ruled as follows:
The next issue is similar that the Central Community School Board asked for an additional thirty-one buses. There [was] no testimony put forth that an additional thirty-one buses [were] being used on the trigger date, which is July 1, 2007. East Baton Rouge Parish delivered thirty-one buses to the Central School District prior to the July 1 trigger date. But there was no testimony or evidence put forth to this court that after July 1, 2007, East Baton Rouge Parish School System was still utilizingor providing services to the Central Community School System to warrant that they do not take any additional buses within that geographical district. There was testimony that sixty-two buses or possibly sixty-three buses [were] used during the '06-'07 school year, but there was no testimony that there [were] sixty-two buses located within the geographic boundaries of the Central Community School System from July 1 on. So[,] therefore, the court is denying the writ of mandamus for the additional thirty-one buses.
On review of this issue, we find the trial court erred. Louisiana Revised Statute 17:66(F)(1) uses the disjunctive "or" in setting forth the required transfer of property located within the geographic boundaries of Central as well as that property used to transport students, as follows: "property having title vested in the public and subject to management, administration, and control by the East Baton Rouge Parish School Board for public education purposes but located within the geographic boundaries of the Central community school system or used to provide student transportation services to such facilities, or both...." (Emphasis added.) Accordingly, we find the statute clearly provides that "[b]eginning on [July 1, 2007]" all property having title vested in EBRP and located in Central "or used to provide student transportation services" to Central, "shall be managed, administered, and controlled by the Central Community School Board." LSA-R.S. 17:66(F)(1). The undisputed testimony shows that at least 62 buses were "used" during the 2006-2007 school year to provide student transportation services to Central. As such, the statute mandates that EBRP transfer those buses that were "used" to Central.
Thus, the trial court erred in interpretating LSA-R.S. 17:66(F)(1), to mean that Central was only entitled to those buses that were located within the geographic boundaries of the Central Community school system on July 1, 2007. Accordingly, we hereby grant the request for mandamus relief and order that EBRP transfer an additional 31 buses to Central pursuant to the mandatory language of LSA-R.S. 17:66(F)(1). The portion of the trial court's judgment denying the Central Board's request for mandamus relief and transfer of the buses used to provide transportation services to students in Central is reversed.
We find merit to this assignment of error.

Assignment of Error Number Five
In the final assignment of error, the Central Board contends that the portion of the former EBRP fund balance in existence on July 1, 2007, plus interest, equal to the percentage of the total number of Central students who attended schools within the former EBRP school system during the 2006-2007 school year, is public property, which should be transferred to Central. The Central Board argues that "[s]ince the funds represented by the fund balance as of June 30, 2007 were collected on behalf of the student *1114 population[,] which included students who resided in [Central], it is only equitable that those public funds be divided by the two successor school boards in proportion to the number of students who resided in each system and were enrolled during the 2006-2007 school year."
However, the Central Board cites no authority or "clear and specific legal right" by which we may compel EBRP to transfer these funds. See City of Hammond v. Parish of Tangipahoa, 985 So.2d at 181. Further, pretermitting the equitable considerations urged by the Central Board, we find that the Central Board has failed to show that this transfer of funds involves only "a ministerial duty required by law." See LSA-C.C.P. art. 3863. Accordingly, we find that the trial court correctly denied this relief, as it is not such that may be granted in a mandamus proceeding.
Thus, we find no merit to this assignment of error.

Answer to Appeal
In its answer to appeal, EBRP challenges the trial court's denial of its Exceptions of No Cause of Action, Unauthorized Use of a Summary Proceeding, Improper Cumulation of Actions, and Vagueness and Ambiguity. Given our resolution of the above assignments of error, wherein we find that mandamus is not an appropriate remedy herein for the relief requested by the Central Board under LSA-R.S. 39:704 and LSA-R.S. 17:66, we pretermit discussion of the issues raised in EBRP's answer to appeal. To the extent that we grant mandamus relief under the specific mandate pursuant to LSA-R.S. 17:66(F)(1) requiring the transfer of school buses as discussed above, we will address EBRP's answer to appeal.
The function of the exception of no cause of action challenges the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Davis v. St. Francisville Country Manor, LLC, XXXX-XXXX (La.App. 1st Cir.2/10/06), 928 So.2d 549, 554, writs denied, XXXX-XXXX (La.5/26/06), 930 So.2d 25 and XXXX-XXXX (La.4/27/07), 955 So.2d 699. No evidence may be introduced to support or controvert the objection. LSA-C.C.P. art. 931. A court must review the petition and accept all well-pleaded facts as true, and the only issue on the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Cage v. Adoption Options of Louisiana, Inc., 94-2173 (La.App. 1st Cir.6/23/95), 657 So.2d 670, 671.
Central's Petition for Writs of Mandamus seeks to compel the EBRP School Board to transfer buses used to provide student transportation pursuant to LSA-R.S. 17:66(F)(1). As discussed above, the provisions of LSA-R.S. 17:66(F)(1) afford a remedy on the facts alleged in the pleadings and on the face of the petition, the plaintiff has set forth a cause of action for the relief sought. Accordingly, on review, we find the trial court correctly overruled EBRP's exception of no cause of action.
With reference to the trial court's denial of EBRP's dilatory exception raising the exception of unauthorized use of a summary proceeding, we note that LSA-C.C.P. art. 2592 provides, in pertinent part, "Summary proceedings may be used for trial or disposition of the following matters only: ... (6) A habeas corpus, mandamus, or quo warranto proceeding." A mandamus proceeding is clearly allowed as a summary proceeding. Moreover, the propriety of the merits of the mandamus proceeding are not to be addressed by a procedural exception. See Smith v. St. Tammany Fire Protection District No. 1, 97-2003 (La.App. 1st Cir.9/25/98), 723 *1115 So.2d 994, 995, writ denied, 98-3075 (La.2/12/99), 738 So.2d 572. To the extent that EBRP argues that their transfer of buses to Central pursuant to LSA-R.S. 17:66(F)(1) is not appropriate in a mandamus or summary proceeding, for the reasons set forth in our discussion of this issue above, we find that the statute does, in fact, mandate that EBRP transfer the buses to Central. Thus, the trial court correctly denied EBRP's exception of unauthorized use of summary proceedings.
EBRP argues that Central has improperly cumulated the summary proceeding of mandamus with relief that can only be acquired through the use of an ordinary proceeding, i.e., a suit for declaratory judgment. However, we note that the only relief sought herein by Central is mandamus. Central has not sought declaratory judgment relief in this proceeding. Thus, we find no merit to this argument.
In response to EBRP's argument concerning its exception of vagueness and ambiguity, to the extent that we granted relief on mandamus with regard to the buses used by Central, we note that Central's petition for mandamus states as follows:
On or about July 15, 2007, EBRP School Board transferred thirty-one (31) buses of similar quality and condition to those used `to provide student transportation services to facilities located in the Central Community School System.['] Upon information and belief in excess of sixty-two (62) buses were used to transport students to schools located within the geographic boundaries of the Central Community School System during the 2006-2007 school year.
* * *
The law provides no relief by ordinary means and the delay involved in obtaining ordinary relief will cause injustice. Therefore, the Central Community School Board is entitled to a writ of mandamus directing EBRP School Board to transfer thirty-one (31) additional buses of similar quality and condition to those used to transport students to facilities located within the geographic boundaries of Central Community School System during the 2006-2007 school year. Additionally, the transfer of the funds will not have the effect of creating a deficit in the funds of the EBRP School Board.
On review, we find nothing ambiguous or vague in Central's request for mandamus relief concerning the transfer of buses pursuant to LSA-R.S. 17:66(F)(1). Accordingly, we find the trial court correctly denied EBRP's exception of vagueness and ambiguity.

CONCLUSION
Based on the above and foregoing reasons, the November 7, 2007 judgment of the trial court is affirmed in part and reversed in part. Judgment is hereby rendered in favor of the Central Community School Board ordering the East Baton Rouge Parish School Board to return or transfer the 31 buses at issue, as required by law. The answer to appeal is denied.
Costs of this appeal in the amount of $1,646.00 are assessed one-half each to the Central Community School Board and the East Baton Rouge Parish School Board.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED; ANSWER TO APPEAL DENIED.
GUIDRY, J., concurs in part, dissents in part and assigns reasons for dissent.
HUGHES, J., concurs.
*1116 GUIDRY, J., concurring in part and dissenting in part.
I respectfully dissent from that portion of the majority opinion that affirms the denial of mandamus relief with respect to the audio/speech therapy equipment and materials removed from Tanglewood Elementary School. The trial court concluded, based on the language of La. R.S. 17:66(F)(1), that the crucial date for determining what property the Central Board was entitled to receive was July 1, 2007, and that there was no evidence this movable property was located within the geographic boundaries of the Central community school system on that date. However, I find the language of La. R.S. 17:66(F)(1) is ambiguous, in that it could also be interpreted as providing the July 1, 2007 date is merely the date on which EBRP had to transfer to the Central Board all the property to which the latter was entitled, and not the date for determining the extent of that property. Thus, since I conclude the language of La. R.S. 17:66(F)(1) does not clearly provide the date on which this determination is to be made, I believe the date on which the statute became effective, December 10, 2006, should be used to make this determination. The record indicates the audio/speech therapy equipment and materials in question were located and used at Tanglewood Elementary School during the 2006-2007 school year and were not removed from there until the end of the school year. Accordingly, since this movable property was located within the geographic boundaries of the Central community school system on the date La. R.S. 17:66(F)(1) became effective, I believe the Central Board is entitled to mandamus relief ordering the return of this movable property.
For the above reasons, I respectfully dissent from that portion of the majority's opinion affirming the denial of mandamus relief as to this movable property. I concur in the result reached by the majority in all other respects.
NOTES
[1] These sections, originally enacted as R.S. 17:65 and R.S. 17:65.1 by Acts 2006, No. 202, § 1, were redesignated as R.S. 17:66 and R.S. 17:66.1 pursuant to the statutory revision authority of the Louisiana State Law Institute.
[2] The four schools located in Central are: Central High School, Central Middle School, Tanglewood Elementary School, and Bellingrath Hills Elementary School.
[3] LSA-Const. art. 13, § 1(C) provides in part: "If a majority of the electors voting on the proposed amendment approve it, the governor shall proclaim its adoption, and it shall become part of this constitution, effective twenty days after the proclamation...." The governor proclaimed the adoption of the amendment by Act 861 on November 20, 2006.
[4] Louisiana Revised Statute 33:2740.37 authorized the creation of Educational Improvement Districts in certain parishes, including East Baton Rouge, to "levy and collect a sales and use tax not to exceed one percent within the district" on all sales excluding food and prescription drugs "at retail, the use, lease or rental, consumption and the storage for use or consumption of tangible personal property, and on sales of services...." LSA-R.S. 33:2740.37(E).

The Finance Department for the City/Parish of East Baton Rouge is the collection agent for sales and use taxes on all taxable goods and services sold in the parish of East Baton Rouge and the State of Louisiana, Department of Public Safety, Office of Motor Vehicles is the collection agent for sales and use taxes on motor vehicles and related services sold in the parish of East Baton Rouge. The sales and use taxes collected by retailers are remitted to the appropriate sales tax collector and the collector remits to the taxing authority in the month following the taxable transaction.
[5] With reference to EBRP's argument that Central's separation from EBRP was an "unforeseen event," we note that prior to the passage of Acts 861 and 202 in 2006, Central had previously attempted on two occasions, in 2001 and again in 2004, albeit unsuccessfully, to pass legislation to create a separate Central Community School System.
[6] See Orleans Parish School Board v. City of New Orleans, 238 La. 738, 747-748, 116 So.2d 505, 509 (La. 1959); Orleans Parish School Board v. City of New Orleans, 198 La. 483, 487-489, 3 So.2d 745, 746-747 (1941); Ziemer v. City of New Orleans, 195 La. 1054, 1067, 197 So. 754, 759 (1940) ("Where [tax] funds are dedicated to a certain purpose they cannot be intermingled with other funds and used indiscriminately[,] but must be applied as dedicated."); Denham Springs Economic Development District v. All Taxpayers, Property Owners, XXXX-XXXX (La.2/4/05), 894 So.2d 325, 334-335 (where, in interpreting a tax increment financing statute, the Louisiana Supreme Court recognized that the statute prohibited dedicated taxes from being used for purposes other than their dedicated purpose).
[7] To the extent that the trial court's judgment denied the Central Board's request for mandamus relief "for the reasons orally assigned," which oral reasons expressed that on the merits, Central was not entitled to $18,398,333.00 in dedicated funds because Central was no longer a part of East Baton Rouge Parish School System as of July 1, 2007, the trial court erred, given our ruling that a mandamus action is not appropriate herein.